SILVER LAKE SANITARY DISTRICT, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
Respondent-Respondent.†

Court of Appeals

*No. 99–0620. Oral argument September 21, 1999.—Decided
December 9, 1999.*

## 2000 WI App 19

(Also reported in 607 N.W.2d 50.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *H. Stanley Riffle* of *Arenz, Molter, Macy & Riffle, S.C.* of Waukesha.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Joanne F. Kloppenburg*, assistant attorney general.

Before Eich, Vergeront and Roggensack, JJ.

¶ 1.   ROGGENSACK, J.   Silver Lake Sanitary District appeals from two orders of the circuit court determining that the Department of Natural Resources (DNR) had standing to challenge the constitutionality of §§ 30.2037 and 30.103, STATS., and also that these statutes were unconstitutional. Because we conclude that the DNR does not have standing to challenge the constitutionality of these statutes, we reverse both orders and remand with instructions to dismiss the DNR's counterclaims.

## BACKGROUND

¶ 2.   Silver Lake sought judicial review of the DNR's decision to set the Ordinary High Water Mark (OHWM) for Big Silver Lake at 868.9 feet above mean sea level. The OHWM of a lake is the point on the banks or the shore to which "the presence and action of water is so continuous as to have a distinct mark either by erosion, destruction of terrestrial vegetation or other easily recognized characteristics." WIS. ADMIN. CODE § NR 320.03(4). The OHWM is an important boundary for riparian owners because it establishes the extent of

218

state ownership in the lake, which impacts the public's right to use the lake as well as the riparian owners' rights in the land above it.

¶ 3. While Silver Lake's litigation was pending, the legislature enacted § 30.2037, STATS. This statute set the OHWM of Big Silver Lake at 867 feet above mean sea level.[1] As a result of the passage of this law, the DNR filed a counterclaim in Silver Lake's ch. 227 proceeding, where the DNR sought a declaratory judgment that § 30.2037 is unconstitutional. The DNR challenged § 30.2037 on the grounds that: (1) it is a local bill in a multiple subject bill and therefore invalid under Article IV, § 18 of the Wisconsin Constitution; (2) it violates the public trust doctrine; (3) it violates the equal protection clause; and (4) it unlawfully encroaches on the authority of the executive branch of state government. The circuit court granted the DNR's motion for a declaratory judgment, holding both that the DNR had standing to challenge the constitutionality of the law and that the law was unconstitutional as a local bill in a multiple subject bill.

¶ 4. Several months later, the legislature enacted § 30.103, STATS. This statute permits a sanitary district to set the OHWM of any lake that is wholly within its district, and it prohibits the DNR from setting a different level.[2] The DNR filed a second

___

[1] Specifically, § 30.2037, STATS., provides "[t]he ordinary high-water mark of Big Silver Lake in the town of Marion in Waushara County shall be set by the department at 867 feet above mean sea level as determined under U.S. geological survey standards."

[2] Section 30.103, STATS., provides:

A town sanitary district may identify the ordinary high-water mark of a lake that lies wholly within unincorporated territory and wholly within the town sanitary district. The department may not

counterclaim in response to the legislature's enactment of § 30.103, seeking a declaratory judgment that § 30.103 is also unconstitutional. The circuit court agreed with the DNR again and held that § 30.103 is an unconstitutional violation of the public trust doctrine and the forever-free clause of the Wisconsin Constitution.

¶ 5. Silver Lake filed a petition for leave to appeal both orders of the circuit court, pursuant to § 808.03(2)(a) and (c), STATS., and we granted it leave to appeal.

## DISCUSSION

### Standard of Review.

¶ 6. Whether a plaintiff has standing to bring a particular issue before a court is a question of law, which we decide independently of a circuit court's decision. *See Le Fevre v. Schrieber*, 167 Wis. 2d 733, 736, 482 N.W.2d 904, 905–06 (1992).

### Standing.

¶ 7. Silver Lake argues that the circuit court erred in concluding that the DNR had standing to challenge the constitutionality of §§ 30.2037 and 30.103, STATS., because a state agency cannot challenge the constitutionality of a statute. *See Fulton Found. v. Department of Taxation*, 13 Wis. 2d 1, 11, 108 N.W.2d 312, 317 (1961). The DNR concedes that generally, a state agency cannot attack a statute's constitutionality; however, it argues that, in limited circumstances, a

identify an ordinary high-water mark of a lake that is different than the ordinary high-water mark identified by a town sanitary district under this section.

state agency can challenge a statute's constitutionality if it presents an issue of great public concern. We conclude, however, that the great public concern exception applies only to cases where a private litigant and a creature of the state are involved, and not to suits limited to creatures of the state.

¶ 8. Agencies, municipal corporations and quasi-municipal corporations are all creatures of the state[3] and their powers are only those ascribed to them by the state. They have no standing to challenge the actions of their creator, such as drawing into question the constitutionality of legislation the state has enacted. *See Dane County v. Health & Soc. Servs. Dep't,* 79 Wis. 2d 323, 330, 255 N.W.2d 539, 543 (1977) (citing *City of Marshfield v. Cameron,* 24 Wis. 2d 56, 63, 127 N.W.2d 809, 813 (1964)). However, this no-standing rule is not absolute, and may be modified, if a private litigant is part of the lawsuit and certain conditions are met. As the supreme court explained:

> The no-standing rule is subject to certain exceptions which apply only to cases between private litigants and a municipality or state agency and not to suits between agencies of the state, or between an agency or municipal corporation and the state.

*Dane County,* 79 Wis. 2d at 331, 255 N.W.2d at 544 (citing *City of Kenosha v. State,* 35 Wis. 2d 317, 331, 151 N.W.2d 36, 43 (1967)); *see also State ex rel. La Crosse v. Rothwell,* 25 Wis. 2d 228, 233, 130 N.W.2d 806, 808–09 (1964). The exceptions to the no-standing rule which a circuit court may apply when a private litigant is a party are available: "(1) If it is the agency's

---

[3] It was undisputed in the court below that Silver Lake is a municipal corporation and the DNR is a state agency; indeed, neither party has contended otherwise on appeal.

official duty to [question the constitutionality of the statute], or the agency will be personally affected if it fails to do so and the statute is held invalid, and (2) if the issue is of 'great public concern.' " *Rothwell*, 25 Wis. 2d at 233, 130 N.W.2d at 808–09 (citation omitted).

¶ 9. The "great public concern" exception, which the DNR urges us to apply here, was first expressed in *Fulton*, where private litigants were parties. There, the Department of Taxation attempted to argue that a retroactive feature of the gift tax exemption was unconstitutional. *See Fulton*, 13 Wis. 2d at 9, 108 N.W.2d at 316. The circuit court determined that the department did not have standing to attack that statute's constitutionality and the department appealed. *See id.* at 10, 108 N.W.2d at 316. The supreme court agreed with the circuit court that generally, a state agency does not have standing. However, citing a case from Washington and one from Minnesota, the court noted that these states permitted a public officer to raise a constitutional issue where the question was one "affected with a public interest." *See id.* at 12, 108 N.W.2d at 318. Utilizing this concept, the court permitted the department to challenge the statute's constitutionality because it concluded the issue was one of great public concern. *See id.* at 13, 108 N.W.2d at 318.

¶ 10. In *Columbia County v. Board of Trustees of the Wisconsin Retirement Fund*, 17 Wis. 2d 310, 116 N.W.2d 142 (1962), the supreme court further elaborated on the great public concern exception and clarified that its application required the presence of private litigants whose rights were affected by the statute being challenged. There, eight counties, along with a taxpayer from Columbia County, sought a declaratory judgment that a statute, which required all

counties to join the Wisconsin Retirement Fund, was unconstitutional. *See id.* at 320, 116 N.W.2d at 148. The supreme court stated that a county, as an arm of the state, had "no right to question the constitutionality of the acts of its superior and creator or of another arm or governmental agency of the state." *See id.* at 317, 116 N.W.2d at 146. The court explained that in only two limited circumstances had it previously allowed an arm of the state to challenge a statute's constitutionality; and it noted that those were "exceptional" cases involving issues of great public concern. *See id.* at 317–18, 116 N.W.2d at 146. In recognizing the great public concern exception, however, the court expressed the limited circumstances in which a circuit court could choose to apply it:

> It will be noted in both these cases, neither the city nor the state agency was suing the state of Wisconsin or another state agency. We are not disposed to extend the exception to the general rule to cover suits between two agencies of the state government or between an arm of the government and the state itself.

*Id.* Applying that rule, the court held that the eight counties could not question the constitutionality of the statute, as against the Retirement Fund; however, the individual taxpayer whose interests were affected by the statute could do so. *See id.* at 319–20, 116 N.W.2d at 147.

¶ 11. Additionally, just two years later, the supreme court expressly declared that the great public concern exception applied only in cases where private litigants were parties. *See Rothwell*, 25 Wis. 2d at 233, 130 N.W.2d at 809. There, the City of La Crosse sued the superintendent of public instruction, alleging the

unconstitutionality of a statute which mandated that all territory within the state be within school districts operating high schools. The superintendent argued that the City did not have standing to raise the issue. The City countered that the statute bore upon an issue of great public concern. *See id.* Citing *Columbia County,* the supreme court held that the great public concern exception applied "only to cases between private litigants and a municipality or state agency and not to suits between agencies of the state, or between an agency or municipal corporation and the state." *Id.* The supreme court then held that the City had no standing to raise the constitutionality of the statute in its suit against a state agency. *See id.* [4]

¶ 12. Despite the supreme court's rulings in *Dane County, Rothwell* and *Columbia County,* the DNR argued, and the circuit court concluded, that private litigants were not essential for an arm of the state to challenge the constitutionality of a statute. Both the DNR and the circuit court relied heavily on *Unified School District Number 1 of Racine County v. WERC,* 81 Wis. 2d 89, 259 N.W.2d 724 (1977), a case decided

---

[4] In *Village of West Milwaukee v. Area Board of Vocational, Technical & Adult Education,* 51 Wis. 2d 356, 365, 187 N.W.2d 387, 390 (1971), the supreme court also reiterated that a private litigant was a necessary condition before the great public concern exception could be considered. There, the Village challenged the constitutionality of a statute which provided for Wisconsin's system of area vocational education districts. *See id.* at 360–61, 187 N.W.2d at 387–88. The supreme court held that the corporate municipal plaintiffs did not have standing to raise the constitutional issues; however, because of the individual litigants involved in the suit, it would consider the statute's constitutionality as though it had been raised by these individuals. *See id.* at 366, 187 N.W.2d at 390.

just four months after *Dane County*, to support that conclusion. In *Unified School District*, WERC determined that the school district had violated its collective bargaining contract by refusing to bargain with the union over the district's decision to subcontract its food service program. *See id.* at 90, 259 N.W.2d at 726. The district appealed and argued that the Municipal Employment Relations Act (MERA) was unconstitutional. Although stating that generally a municipality cannot question the constitutionality of a statute, the supreme court noted an exception for issues involving great public concern. *See id.* at 104, 259 N.W.2d at 732. The court failed, however, to analyze whether the exception required the involvement of private litigants, and, in fact, no private litigants were parties to the suit. The DNR argues that because the court considered the merits of the district's arguments, then by implication, the court must have determined that the district had standing. Therefore, it contends that the presence of private litigants is not necessary for it to challenge the constitutionality of §§ 30.2037 and 30.103, STATS. We disagree.

¶ 13.   First, it does not appear from the opinion in *Unified School District* that WERC contested whether the great public concern exception could be applied to the suit. It is blackletter law that an opinion does not establish binding precedent for an issue if that issue was neither contested nor decided. *See Fulton*, 13 Wis. 2d at 10, 108 N.W.2d at 316–17 (the supreme court stated that despite previous cases in which a state agency challenged a statute's constitutionality, those cases had no efficacy as precedent because the right of the state agency to do so was not challenged and therefore, not decided). Second, the court in *Unified School District* was quick to dismiss the school district's argu-

ment on the merits, noting that accepting the district's contention would require it to reverse countless cases in which it had previously rejected the same argument. *See Unified Sch. Dist.*, 81 Wis. 2d at 104–05, 259 N.W.2d at 733. Given that the proposition asserted by the school district had been previously rejected in countless cases, and that it is unclear from the opinion whether the court's authority to consider whether to apply the great public concern exception was even contested by WERC, we decline to read *Unified School District* as changing the law so as to permit a state agency to challenge a statute's constitutionality when no private litigant is present in the lawsuit. We also note that to conclude otherwise would require us to ignore a rule of law expressed in several supreme court cases,[5] including *Dane County*, which re-affirmed the no-standing rule just four months before its decision was released in *Unified School District*. Given the short length of time between *Dane County* and *Unified School District*, it is extremely unlikely that the court in *Unified School District* overruled, *sub silentio*, a decision made by the same court just four months earlier.

---

[5] Other cases cited by the State to support its contention that private litigants are not needed for the court to apply the great public concern exception include *Milwaukee County v. Milwaukee District Council 48*, 109 Wis. 2d 14, 325 N.W.2d 350 (Ct. App. 1982), and *City of Madison v. Ayers*, 85 Wis. 2d 540, 271 N.W.2d 101 (1978). It is true that in those cases the court did not explicitly state that the great public concern exception applied only to cases where a private litigant is involved. However, in both cases, the litigation had private litigants as parties; and therefore, it was not an issue for the court to address.

¶ 14. Finally, we note that in our most recent opinion on the no-standing rule, we confirmed that the great public concern exception applies only to cases with private litigants. *See S.C. Johnson & Son, Inc. v. Town of Caledonia*, 206 Wis. 2d 292, 303, 557 N.W.2d 412, 416 (Ct. App. 1996). In *S.C. Johnson*, we examined whether a town had standing to challenge the constitutionality of a property owner's commencement of a *de novo* proceeding to contest a real estate property assessment. *See id.* at 295, 557 N.W.2d at 413–14. The circuit court concluded that the Town, as a creature of the legislature, did not have standing to argue that a statute was unconstitutional. *See id.* We agreed, stating:

> The "no standing" rule is absolute in cases between an agency or a municipality and the state. The rule also applies in cases between a municipality and a private citizen, but is subject to two exceptions. The rule does not apply: (1) when the governmental agency has a duty to raise the issue . . .; and (2) if the issue is of "great public concern."

*Id.* at 303, 557 N.W.2d at 416 (citation omitted). We then affirmed the circuit court's ruling that the Town lacked standing to raise the constitutional claim. *See id.* at 304, 557 N.W.2d at 417.

¶ 15. Because the supreme court has expressly stated that private litigants are an essential element of a lawsuit where an arm of the state contests a statute's constitutionality under the great public concern exception, we conclude that the great public concern exception cannot apply in a suit limited to two creatures of the state. Accordingly, because there are no private litigants in this suit, we conclude that the DNR does not have standing to contest the constitutionality

of §§ 30.2037 and 30.103, Stats. Accordingly, we reverse the orders of the circuit court.[6]

## CONCLUSION

¶ 16. We conclude that the DNR does not have standing to challenge the constitutionality of §§ 30.2037 and 30.103, Stats., and therefore, we reverse both orders of the circuit court and remand with instructions to dismiss the DNR's counterclaims.

*By the Court.*—Orders reversed and cause remanded with directions.

¶ 17. VERGERONT, J. *(concurring)*. I agree with the conclusion of the majority opinion that DNR does not have standing to challenge the constitutionality of §§ 30.2037 and 30.103, Stats. The requirement that there be a private litigant in order to apply the great public concern exception to the general rule of no-standing has been enunciated by the supreme court, has not been expressly repudiated or overruled by it, and this court has applied the requirement in our most recent decision on the issue, *S.C. Johnson & Son, Inc. v. Town of Calendonia*, 206 Wis. 2d 292, 303, 557 N.W.2d 412, 416 (Ct. App. 1996).[1] I write separately to

---

[6] Because of our decision in regard to standing, we do not reach the merits of the other issues raised by the parties.

[1] *S.C. Johnson & Son, Inc. v. Town of Calendonia*, 206 Wis. 2d 292, 557 N.W.2d 412 (Ct. App. 1996), does not refer to this court's earlier decision, *Milwaukee County v. Milwaukee Dist. Council 48*, 109 Wis. 2d 14, 325 N.W.2d 350 (Ct. App. 1982), which discussed both the great public concern and the official duty exceptions to the no-standing rule. In *Milwaukee County* we stated that the official duty exception, not applicable in this case, applied only where there was a private litigant, but we did

express my view that the case law establishing and applying this requirement does not make apparent the purpose of the requirement, thus raising, for me, the question whether it needs to be re-examined by the supreme court.[2]

¶ 18. The case that established the great public concern exception, *Fulton Found. v. Department of Taxation*, 13 Wis. 2d 1, 108 N.W.2d 312 (1961), did not mention such a requirement. It is true that in *Fulton* there was a private litigant—a non-profit corporation challenging an order of the Department of Taxation denying its application for the abatement of an assessment of a gift tax. However, the court's discussion and application of the exception did not contain any reference to the private status of that litigant. *See id.* at 12–14A, 108 N.W.2d at 318–19. When, on rehearing, the court changed its decision that one of the issues was not of great public concern, the court stated that one policy reason for permitting the department to raise this issue was that, unless the department were permitted to do so, there was little likelihood that any taxpayer would. *Fulton*, 13 Wis. 2d 1, 14B, 109 N.W.2d 285, 286 (1961). The court contrasted the situation before it with the enactment of a statute imposing a new tax, when the purported constitutional deficiency would likely be raised by the taxpayers against whom an attempt is made to assess and collect the tax. *Id.*

¶ 19. From *Fulton* we know that in deciding whether an exception should be made for an issue of great public concern, it is relevant whether an individ-

not state that as a requirement for the exception of great public concern. *Id.* at 21, 325 N.W.2d at 353.

[2] I do not address the question whether the issue DNR seeks to raise is one of great public concern, if the private litigant requirement were not to apply.

ual is likely to raise the same constitutional challenge that the state agency or municipality is seeking to raise. But the private status of the party against whom the governmental litigant makes the constitutional challenge is nowhere mentioned in the *Fulton* court's analysis.

¶ 20. Soon after *Fulton* was decided, the supreme court applied the great public concern exception in *Associated Hosp. Serv., Inc. v. City of Milwaukee*, 13 Wis. 2d 447, 109 N.W.2d 271 (1961). As in *Fulton*, a private litigant was relying on tax statutes which, it claimed, granted it exemptions, and a governmental entity—the City of Milwaukee—was challenging the statute on constitutional grounds. Also as in *Fulton*, in discussing and applying the exception, the court made no reference to the private status of the party relying on the statute.

¶ 21. The case in which the requirement that there be a private litigant appears to have originated is *Columbia County v. Board of Trustees of the Wisconsin Retirement Fund*, 17 Wis. 2d 310, 116 N.W.2d 142 (1962). There the county and a taxpayer sought declaratory relief against the board of trustees of the Wisconsin Retirement Fund, seeking adjudication of the constitutionality of a statute. In addressing the standing of the county to challenge the constitutionality of the statute, the court referred to both *Fulton* and *Associated Hospital*, explaining that in each the suit was brought by a private taxpayer, and the governmental entity was raising as a defense the unconstitutionality of the statutes on which the taxpayers relied. *Id.* at 318, 116 N.W.2d at 146. After noting that in neither of those cases was the county or the state agency suing the State of Wisconsin or another state agency, the court stated:

> We are not disposed to extend the exception to the
> general rule to cover suits between two agencies of
> the state government or between an arm of the gov-
> ernment and the state itself.

*Id.*

¶ 22. The court in *Columbia County* went on to
conclude that the individual taxpayer did have the
capacity to bring suit and a right to raise the constitu-
tional issue on behalf of himself and other taxpayers.
*Id.* at 319, 116 N.W.2d at 147. The court did not indi-
cate that the reason it was not permitting the county to
challenge the constitutionality of the statute was that
there were taxpayers who had standing to do so and
were, in fact, doing so in the same suit. Under *Fulton*,
that would be a proper reason to decline to apply the
exception to the county. Instead, in *Columbia County*
the court appears to establish an absolute bar against
applying the great public concern exception in a dis-
pute between an arm of the government and the state
itself or between two agencies of the state government.
However, the court does not explain how this limitation
is relevant to the question whether an issue is one of
great public concern, and no reason is apparent to this
writer from the court's decision.

¶ 23. *Columbia County* was cited in five subse-
quent cases, which concluded that municipalities did
not have standing to challenge the constitutionality of
legislation, since the state or a state agency was the
defendant. *State ex rel. City of La Crosse v. Rothwell*, 25
Wis. 2d 228, 233, 130 N.W.2d 806, 808 (1964); *City of
Kenosha v. State*, 35 Wis. 2d 317, 331, 151 N.W.2d 36
(1967); *Village of West Milwaukee v. Area Bd. of Voca-
tional, Technical & Adult Educ.*, 51 Wis. 2d 356,
365–66, 187 N.W.2d 387, 390 (1971); *City of Eau Claire
v. DNR*, 60 Wis. 2d 751, 752, 210 N.W.2d 771, 771

(1973), and *County of Dane v. Dane County Dept. of Soc. Servs.*, 79 Wis. 2d 323, 331, 255 N.W.2d 539, 544 (1977). In none of these cases was there an explanation of the reason for requiring a private litigant before the great public concern exception might apply. In *La Crosse*, 25 Wis. 2d at 233, 130 N.W.2d at 808, and *West Milwaukee*, 51 Wis. 2d at 365–66, 187 N.W.2d at 390, the court added that the individual plaintiffs did have standing to raise the constitutional questions. On the motion for rehearing in *La Crosse*, 25 Wis. 2d 228, 131 N.W.2d 699 (1964), the court distinguished the case before it from *Associated Hospital*, explaining that the court there permitted the city to raise the issue of the constitutionality of a statute as an issue of great public concern in acting in its representative capacity, but there was no need for the City of La Crosse to act in its representative capacity because there were electors and taxpayers who were parties to the suit and could raise the same constitutional issue as the city sought to raise. *Id.* at 239–39A, 131 N.W.2d at 699. Thus, although the *La Crosse* court in its first opinion cited *Columbia County* for the proposition that the exception applies only to cases between a private litigant and a municipality or state agency, *La Crosse*, 25 Wis. 2d at 233, 130 N.W.2d at 808, its decision on rehearing relies on a different reasoning—that referred to in the *Fulton* decision on rehearing: if an individual is raising or is likely to raise the issue of the constitutionality of a statute, there is no need to make an exception to the no-standing rule for the municipality or state agency.

¶ 24.   In *Kenosha*, after concluding that the city lacked standing under *Columbia County* and *La Crosse* to challenge the constitutionality of a statute concerning voting machines in an action against the secretary of state and the State of Wisconsin, the court stated:

"The city's remedy is to force the attorney general to bring an action of mandamus against it. In this way, the constitutional issues will be properly before this court." *Kenosha*, 35 Wis. 2d at 331, 151 N.W.2d at 43. The court does not further explain this sentence, and leaves unanswered the question why a mandamus action brought by the state against the city, where the litigants will be the same and there will be no private litigants, would permit the city to raise the constitutionality of the statute. It may be that the court is suggesting that a municipality can challenge the constitutionality of a statute in a suit brought against it by the state or state agency, but why this should be so is not apparent.

¶ 25.    The next relevant case is *Unified Sch. Dist. No. 1 v. WERC*, 81 Wis. 2d 89, 259 N.W.2d 724 (1977), in which the court concluded the great public concern exception did apply in a municipality's suit against a state agency challenging the constitutionality statute. However, as the majority opinion correctly points out, the issue whether that exception could be applied in the absence of a private litigant was not raised or addressed by the court. The next year, in the *City of Madison v. Ayers*, 85 Wis. 2d 540, 271 N.W.2d 101 (1978), the court discussed the cases that had applied the great public concern exception and those that had declined to do so, and concluded that the issue before it was not a great public concern because it dealt with the extension of worker's compensation eligibility to a small class of applicants. *Id.* at 545–46, 271 N.W.2d at 103–04.    The court did not make reference to the requirement that there need be a private litigant in order to apply the great public concern exception. It is true, as the majority opinion points out, that there was a private litigant, because the city was suing an indi-

vidual as well as a state agency and the State of Wisconsin. However, the court makes no mention of the existence of a private litigant in its discussion and application of the great public concern exception.

¶ 26. It is difficult to derive from these cases a reasoned basis for the requirement that there be a private litigant in order that a municipality or state agency may challenge the constitutionality of a statute, when the issue is one of great public concern. The "necessary" private litigant is not—as *Fulton* and *Associated Hospital* demonstrate—challenging the constitutionality of the statute, but, rather, is relying on it. What policy or purpose is served by permitting a municipality or state agency to challenge the constitutionality of the statute in that situation, if the issue is one of great public concern, but not in cases where the opposing party relying on the statute is a municipality or state agency, regardless of the degree of public importance of the issue? The actual or likely existence of an individual challenging the statute on the same constitutional ground is, as the court in *Fulton* explained on rehearing, relevant in deciding whether the exception is necessary in a particular case: even if an issue is one of great public concern, there is no need to create an exception to the no-standing rule for municipalities and state agencies if the statute's unconstitutionality is being raised, or may likely be raised, by those individuals affected by it. But why is the existence of a private litigant *relying* on the statute necessary before a municipality or state agency may raise an issue of great public concern?

¶ 27. In my view it would be helpful to litigants—particularly municipalities and state agencies—and to the courts, for the supreme court to re-examine this requirement and determine whether it

furthers the policies underlying the general no-standing rule, or serves the purpose of narrowing the exception in a meaningful way. Whatever the results of that re-examination, the court's decision would provide a much needed clarification of existing case law.